**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| VIVIAN CORNETT, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 4:09-cv-0138-SEB-WGH |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**Entry Discussing Complaint for Judicial Review**

Vivian Cornett ("Cornett") applied for Disabled Widow's Insurance Benefits ("DWIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 402 (e), 423(d), and 1382c (the "Act"), on February 9, 2006, and September 19, 2006, respectively, asserting an amended onset date of February 3, 2003. Cornett seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

**I. Background**

Cornett's applications for DWIB and SSI were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on October 28, 2008. Cornett was present, accompanied by her attorney. Medical and other records were introduced into evidence, and Cornett and a vocational expert testified at the hearing.

The ALJ issued a decision on November 26, 2008, denying benefits. On June 24, 2009, the Appeals Council denied Cornett's request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Cornett is the unmarried widow of the deceased insured worker and had attained the age of 50, and she met the non-disability requirements for DWIB set forth in section 202(e) of the Act; (2) the prescribed period ends on September 30, 2013; (3) Cornett had not engaged in substantial gainful activity since February 3, 2003, the alleged onset date; (4) Cornett had the following severe impairments: general anxiety disorder, panic disorder without agoraphobia, multilevel arthropathy of the lumbar spine, and degenerative disease of the right shoulder; (5) Cornett did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (6) Cornett had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) with the following limitations: she was limited to frequent overhead reaching on the right, she could understand, remember, and carry out simple and non-detailed tasks, and she could maintain concentration and attention for two-hour segments over an eight-hour period if the duties were relatively static and any changes could be explained; and (7) Cornett was capable of performing past relevant work as a palette maker, as this work did not require the performance of work-related activities precluded by her RFC. With these findings in hand, and through the application of applicable rules, the ALJ concluded that Cornett was not under a "disability" as defined in the Act from February 3, 2003, through the date of the ALJ's decision.

## II. Discussion

### A. Applicable Law

To be eligible for DWIB or SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 1382c. To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 416.908.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy.

2

*Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.   Analysis

The ALJ denied Cornett's application for benefits because he found that she could perform her past relevant work. Cornett argues that the ALJ's decision is not supported by substantial evidence.

Cornett first argues that the ALJ improperly failed to give controlling weight to the opinion of treating physician Dr. Scudder. Dr. Scudder saw Cornett two to three times a year for over 30 years. (R. at 313). On October 16, 2008, Dr. Scudder completed a Physical Residual Functional Capacity Questionnaire. (R. at 313-17). Dr. Scudder opined that Cornett could lift 10 pounds occasionally, could sit and stand/walk for two hours in an 8-hour working day, could sit and stand 20 minutes at one time, and could rarely twist, stoop (bend), crouch, and climb ladders and stairs. *Id.* The ALJ referenced the questionnaire completed by Dr. Scudder and rejected Dr. Scudder's opinion that Cornett "could not work an eight hour day" by stating that the form was "unaccompanied by any objective medical evidence to substantiate this opinion." (R. at 17).

After discussing the evidence of record, the ALJ concluded that Cornett could perform medium work, meaning that she could lift up to 50 pounds at a time, with frequent lifting or carrying of objects weighing up to 25 pounds. (R. at 16). He further concluded that she was limited to frequent overhead reaching on the right, she could understand, remember, and carry out simple and non-detailed tasks, and she could maintain concentration and attention for two-hour segments over an eight-hour period, if the duties were relatively static and any changes were explained. *Id.*

The ALJ noted that a bone scan of March 2007 indicated only a mild abnormal uptake consistent with arthritis, and that a right shoulder x-ray was normal in September 2006, that other x-rays were normal back to February 2003, and that spinal x-rays did not indicate nerve impingement resulting in functional limitations. (R. at 17, citing R. at 222 ("mild to moderate discogenic degenerative change, not acute fracture"), 256 ("normal lumbar spine"), 289 ("mild right CTS")). Cornett concedes that x-rays were normal through 2006, but she argues that the ALJ erred in failing to recognize that shoulder x-rays in 2007

3

showed an arthritic lesion and that a bone scan confirmed this problem. Cornett does not cite to any page in the record that supports that contention. The ALJ correctly noted that the September 28, 2006, x-ray of Cornett's right shoulder was "normal." (R. at 277-78, 295). The bone scan conducted on March 7, 2007, revealed "mild abnormal uptake involving the acromioclavicular, glenohumeral and subacromial compartments of the right shoulder most consistent with arthritis, no other abnormality is present." (R. at 280). The ALJ's assessment of the objective evidence is supported by substantial evidence.

In response to Cornett's disagreement with the manner in which the ALJ weighed the opinions of record, the Commissioner responds that the ALJ's decision is consistent with the State Agency opinion of August 16, 2006, and with that of the consulting examining physician Dr. Bailey. Cornett contends that the ALJ's reliance on the State Agency (Dr. Caldwell) opinion, rendered on August 16, 2006, is erroneous because that decision was issued years before the ALJ conducted the hearing and before most of the records, including the bone scan, abnormal shoulder x-ray, diagnoses of frozen shoulder and cervical radiculopathy had been submitted. The court has already discredited Cornett's reference to an abnormal shoulder x-ray and bone scan. Moreover, Cornett is mistaken in her statement that "[i]n this Circuit non-examining state agency opinions cannot count as substantial evidence to support an RFC." Cornett misstates Seventh Circuit precedent when she argues that opinions of treating physicians are entitled to greater weight than are the opinions of any non-examining physician. Indeed, neither of the two cases cited by Cornett even discuss the issue of the weight given to treating physicians and other medical source opinions. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000).

"A treating physician's opinion concerning the nature and severity of a claimant's injuries receives controlling weight only when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'consistent with substantial evidence in the record.'" *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). "The treating physician's opinion is important because that doctor has been able to observe the claimant over an extended period of time, but it may also be unreliable if the doctor is sympathetic with the patient and thus too quickly find[s] disability." *Id.* (internal quotation omitted). "Accordingly, if the treating physician's opinion is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints, the ALJ may discount it." *Id.* In *Ketelboeter*, the Seventh Circuit rejected the very argument Cornett makes here. "Substantial evidence supports the ALJ's decision to give greater weight to the state-agency doctors' opinions than to that of Ketelboeter's treating physician, Dr. Dickson." *Id.* "[A] claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work." *Dixon v.Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). *See also Hofslien v. Barnhart*, 439 F.3d 375, 376-77 (7th Cir. 2006) (clarifying "treating physician rule" and noting that it can be proper to give opinion of non-examining physician greater weight than that of treating physician).

4

In her final claim, Cornett asserts that the ALJ failed to include in her RFC all of her limitations. She contends that the ALJ erroneously failed to account for the fact that her panic attacks would cause her to miss work or need unscheduled breaks, that her back ailment would require alternate sitting/standing and limitations with stooping, twisting and moving her neck, and that her weakness in her right hand would limit motor and fine handling. The court is not persuaded that there was reversible error in this regard. The ALJ did discuss Cornett's history of panic attacks, but after reviewing the mental impairment evidence, he concluded that her mental impairment caused only mild limitations in her activities of daily living and social functioning, and caused moderate difficulties with regard to concentration, persistence or pace. (R. at 15). The ALJ provided in his RFC determination that Cornett could maintain concentration and attention for two-hour segments over an eight-hour period, if duties were relatively static and changes were explained. (R. at 16). With respect to Cornett's right hand, the court notes that treating physician Dr. Scudder placed no restrictions on Cornett's ability to use her hands and fingers. (R. at 317). Otherwise, Cornett does not specify where "the record proves" these other limitations. Although some evidence may support Cornett's argument as to these various conditions, the court cannot reweigh the evidence to make such findings, as long as the ALJ's assessment was supported by substantial evidence, which it was in this case.

As noted, the court's role in this case is not to attempt a *de novo* determination of Cornett's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence. If the ALJ's view of the evidence is supported by substantial evidence, the court must affirm the decision. "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (internal quotation omitted). The court is "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The court cannot reweigh the evidence, including the opinions of treating and non-examining physicians.

"An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). In this case, even if the court might have weighed the evidence differently, the ALJ sufficiently articulated his assessment of the evidence to enable the court to "trace the path of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation omitted). Accordingly, because substantial evidence supports the ALJ's evaluation of Cornett's impairments, the ALJ's decision must be affirmed.

### III. Conclusion

There was no reversible error in the assessment of Cornett's applications for DWIB and SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. Under these circumstances, Cornett is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 11/08/2010

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana